IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ROBERT GROVE STONE and
GARY RALPH STONE,

    Plaintiffs,

v.

UNITED STATES OF AMERICA,

    Defendant.

NO. C06-0259 TEH

<u>SUPPLEMENTAL FINDINGS OF
FACT AND CONCLUSIONS OF
LAW</u>

This case concerns the value, for estate tax purposes, of the 50% undivided interest in nineteen paintings held by the estate of Lois M. Stone ("Estate"). On May 25, 2007, this Court issued its findings of fact and conclusions of law following a trial without a jury on April 10 and 12, 2007. The Court determined that the total fair market value of the nineteen paintings at issue in this case was $5,532,500, so that the starting point for determining the value of the Estate's 50% interest in the paintings is 50% of $5,532,500, or $2,766,250. Findings of Fact and Conclusions of Law ("FF&CL") at 4-6. The Court further ruled that the Estate was entitled to claim a discount based on its ownership of a fractional interest in the paintings, but it rejected Plaintiffs' claimed discount of 44% because Plaintiffs' expert's testimony was unpersuasive as applied to the art world. *Id.* at 7-13. The Court concluded that:

> a hypothetical willing seller of an undivided fractional interest in art would likely seek to sell the entire work of art and split the proceeds, rather than seeking to sell his or her fractional interest at a discount. At a minimum, because an undivided interest holder has the right to partition, a hypothetical seller under no compulsion to sell would not accept any less for his or her undivided interest than could be obtained by splitting proceeds in this manner.

*Id.* at 8. The Court determined that the Estate was not entitled to claim a discount for appraisal fees, but that the Estate was entitled to a discount of 2% to account for the actual

1  costs of selling the art by an auction house, as well as a discount of $50,000 to account for
2  legal fees required to enforce the hypothetical seller's right to partition. *Id.* at 10-11. The
3  Court also concluded that "some discount is appropriate to allow for the uncertainties
4  involved in waiting to sell the collection until after a hypothetical partition action is
5  resolved." *Id.* at 12. Finally, the Court ordered the parties to meet and confer and attempt to
6  settle on an appropriate amount of such a discount. *Id.* at 13.

7  On June 14, 2007, the parties informed the Court that they were unable to reach
8  agreement. In addition, although Plaintiffs proposed engaging in additional settlement
9  discussions with a magistrate judge, Defendant was unwilling to do so. Accordingly, on
10 June 15, 2007, this Court ordered the parties to file simultaneous supplemental briefs and
11 reply briefs. The parties timely submitted all supplemental briefs, and the matter is now back
12 before this Court for resolution. In their supplemental briefs, Plaintiffs assert that a total
13 discount of at least 35% would be appropriate, while Defendant argues that no discount is
14 appropriate but agrees to a 5% discount "in a spirit of compromise." Def.'s Suppl. Br. at 2.

15 The Court finds this matter suitable for decision without further oral argument. Upon
16 careful consideration of the parties' arguments, the Court rules as follows: First, the Court
17 does not find persuasive Plaintiffs' assertion that the Court should accept the methodology of
18 Plaintiffs' expert even though it rejected the expert's underlying assumptions. One of the
19 assumptions that the Court rejected based on the evidence presented at trial was that the art
20 market differs from that for micro-cap companies and other equity offerings. For example,
21 the Court explained that "[a]rt is simply not fungible." FF&CL at 7. As Defendant's experts
22 persuasively explained at trial, collectors of art are often drawn to the aesthetics of a
23 particular work of art, rather than viewing art simply as an investment vehicle. Plaintiffs'
24 expert's methodology is flawed because it fails to take this fact into account.

25 Moreover, even if art may be an investment vehicle for some, Plaintiffs have still
26 failed to explain the incongruity in assuming "that the art [in the Estate's collection] will
27 appreciate by only 3% per year while simultaneously assuming that the appropriate discount
28 rate or expected rate of return to calculate NPV [net present value] is six times that amount,

2

or 18%, even before adding a 10% illiquidity premium." FF&CL at 12.  In their supplemental brief, Plaintiffs propose reducing the expected rate of return from the 28% in their expert's report to 20%, but they do not provide sufficient evidence to justify even a 20% discount rate.  This Court continues to fail to find persuasive a model that assumes that investors who would choose to invest in art, which is expected to appreciate at an annual average rate of 3% (and some of which, in this case, actually appreciated at an annual average rate of approximately 4%), would expect to receive significantly higher returns if they invested their money elsewhere.  Put another way, an investor seeking a 20% or 28% return would not choose to invest in art that is expected to return only a fraction of those percentages.  Thus, even if the Court were to accept Plaintiffs' expert's methodology, the Court concludes that Plaintiffs' proposed 20% and 28% rates of returns are unreasonable, and Plaintiffs have failed to provide any basis on which this Court could arrive at a reasonable expected rate of return for individuals who invest in art, other than the 3% at which Plaintiffs assert art generally appreciates each year.[1]

As this Court has previously noted, and as Plaintiffs do not dispute, Plaintiffs "bear[] the burden of proving that the [tax] assessment was incorrect and proving the correct amount of the tax owed." *Ray v. United States*, 762 F.2d 1361, 1362 (9th Cir. 1985).  Based on the evidence presented, this Court finds that Plaintiffs have failed to meet their burden except as to the incorrectness of the tax assessed and the suitability of a 2% discount to account for the actual costs of selling the art by an auction house and a $50,000 discount to account for legal fees required to enforce the hypothetical seller's right to partition.

Nonetheless, in its supplemental brief, the government proposes a 5% total discount. After taking into account the 2% in sales fees and $50,000 in legal fees that this Court has already determined the Estate is entitled to claim as discounts, a 5% discount includes only an approximate 1.2% discount for the uncertainties involved in waiting for the partition

---

[1] Of course, using a 3% rate of return would result in no discount given that Plaintiffs' expert assumes that art appreciates at a 3% annual rate.

3

action to become resolved.[2] While this discount appears to be relatively low, Plaintiffs have provided no evidence from which this Court could reasonably base any larger discount. As a result, any discount other than that to which the government has already agreed would be impermissibly arbitrary.

In addition, Plaintiffs have not persuaded the Court that a hypothetical buyer would refuse to buy the Estate's interest in the collection unless the discount were greater than 5%. Plaintiffs attempt to make much of Defendant's experts' testimony that a 44% discount might be acceptable to a buyer, and that a buyer would try to get the best possible price; however, the Court concludes from these statements only what it assumes to be true for buyers of any good or service: namely, that buyers will always try to get the best deal possible. In this case, the Court must decide the price at which a hypothetical buyer and hypothetical seller would agree upon a sale, and Plaintiffs have not met their burden of persuading the Court that a hypothetical buyer would demand, and a hypothetical seller would agree to, a greater discount than 5%.

Consequently, for all of the reasons discussed above and in the Court's May 25, 2007 Findings of Fact and Conclusions of Law, the Court finds that Plaintiffs are entitled to claim a 5% discount, taken from a base value of $2,766,250, when valuing the Estate's interest in the art collection at issue for estate tax purposes. The parties have agreed to perform the necessary calculations to determine the appropriate amount of the tax refund due to Plaintiffs. Accordingly, the Court hereby orders the parties to meet and confer and submit a proposed judgment to the Court on or before **August 24, 2007.**

**IT IS SO ORDERED.**

Dated:   08/10/07

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT

---

[2] The $50,000 in legal fees amounts to approximately 1.8% of the $2,766,250 total value of the Estate's share of the collection.

4